IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.                                                                                          Criminal No. 07-298

DAVID CUNNINGHAM

MEMORANDUM OPINION REGARDING
DEFENDANT'S MOTION TO SUPPRESS

Defendant, David Cunningham (hereafter "Defendant"), is charged with possession and receipt of child pornography in violation of Title 18, United States Code, Section 2252(a)(4)(B) and (a)(2). Defendant files a pretrial Motion to Suppress Search Warrant Evidence and Statements (doc. no. 50), and a Motion to Produce Evidence Pursuant to Federal Rules of Evidence 404(b) and 609 (doc. no. 49). For the following reasons, these Motions will be denied.

### I.  Factual Background

On June 17, 2007, Corporal Robert Erdely of the Pennsylvania State Police, while conducting undercover investigations into the internet sharing of child pornography, downloaded several files from Defendant's "Limewire" account. Because access is freely accessible to any "Limewire" user, Trooper Erdely was able to download 6 videos depicting child pornography in violation of Title 18, United States Code, Section 2252(a)(4) and (a)(2). As a result, a search warrant was granted and executed approximately 30 days later at 7 Mingo Creek Road, Eighty Four, PA, 15330. The search resulted in the seizure of Defendant's computer, which stored over 20 videos depicting child pornography. In addition, Defendant was questioned in his brother and sister's home at the time of the search and he provided information as to his ownership of the

confiscated materials and a previous charge against him relating to indecent sexual assault of a minor.

## II. Discussion

### A. The Warrant – Over Breadth

Defendant contends that the search warrant issued for #7 Mingo Creek Road Eighty Four, Pennsylvania 15330 (" search warrant") was overly broad.  The search warrant (doc. no. 62), prepared by State Trooper Robert W. Erdely, contained a four-page summary of the items to be searched for and seized.  Included in the search warrant were essentially any computer, files, related peripheral and any documentation pertaining to computer hardware and software.  *See* Doc. No. 62 at 18-21.  In addition, based on the content Trooper Erdely downloaded from Defendant's computer, the search warrant also included any tangible information or documentation pertaining to Defendant's knowledge of or interest in child pornography.  *Id*.

In arguing that the search warrant was overbroad, Defendant is contending that it lacked probable cause as to each specific item covered.  The task of the Magistrate Judge issuing a search warrant is simply to make a practical, common-sense decision whether, given all circumstances set forth in affidavit before him or her, including veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of crime will be found in a particular place.  The duty of reviewing court is simply to ensure that the Magistrate Judge had a substantial basis for concluding that probable cause existed. *U.S. Const. amend. IV*.

A Magistrate Judge may find probable cause when, viewing the totality of the circumstances, "there is a fair probability that . . . evidence of a crime will be found in a

particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  When a warrant is issued and later challenged, a deferential standard of review is applied in determining whether the Magistrate Judge's probable cause decision was erroneous. The reviewing court inquires whether there was "a substantial basis for finding probable cause," *U.S. v. Hodge,* 246 F.3d 301, 305 (3d Cir. 2001) *quoting U.S. v. Jones,* 994 F.2d 1051, 1054 (3d Cir. 1993), as "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." *Gates*, 462 U.S. at 236.

The Fourth Amendment provides that warrants must "particularly describ[e] the place to be searched and the persons or things to be seized." *U.S. Const. amend. IV.*  General warrants [1] violate the Fourth Amendment because they essentially authorize "a general exploratory rummaging in a person's belongings."  *Coolidge v. Hampshire*, 403 U.S. 443, 467 (1971).

Here, the search warrant allowed law enforcement personnel to search and seize any computers, computer peripherals, computer storage, software, media, and generally, any tangible information relating to Defendant's interest or knowledge of child pornography.  This scenario is factually similar to that of *U.S. v. Himmelreich*, 265 Fed. Appx. 100 (3d Cir. 2008).  In *Himmelreich*, an "over breadth" challenge was made to a warrant that contained essentially the

---

[1] There is a legal distinction between a general warrant which is invalid because it vests the "executing officers with unbridled discretion to conduct an exploratory rummaging through [Defendant's] papers in search of criminal evidence," and an overly broad warrant, which " 'describe[s] in both specific and inclusive general terms what is to be seized,' but 'authorizes the seizure of items as to which there is no 'probable cause.' " *Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422,57),* 307 F.3d 137, 149 (3d Cir. 2002)(quoting *U.S. v. Christine,* 687 F.2d 749, 753-54 (3d Cir. 1982). As discussed above, an overly broad warrant can be redacted to strike out those portions of the warrant that are invalid for lack of probable cause, maintaining the remainder of the warrant that satisfies the Fourth Amendment.  *Id.*  In contrast, the only remedy for a general warrant is to suppress all evidence obtained thereby.  *Id.* at 758 ("It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed.").

same language as in the instant case.  There, the United States Court of Appeals for the Third Circuit found that the warrant was sufficiently particularized under the Fourth Amendment even though it did not provide clear techniques and limitations for searches.  *Id*. at 102.  In addition, the Court of Appeals "decline[d] to adopt any particular procedures governing the search of computers."  *Id*. at 103.

As previously stated, the search warrant here was the product of an internet investigation.  Based on the evidence Trooper Erdely downloaded from Defendant's "Limewire" account, the affidavit for the search warrant was written specifically to find any and all evidence of child pornography at the Mingo Creek residence.  Because the affidavit and warrant were written in a manner consistent within Constitutional parameters and Federal Law, the search warrant was not overly broad.

**B.  The Warrant - Staleness**

Defendant's second argument to the search warrant is that the information contained in the search warrant was stale because the information downloaded by Trooper Erdely was approximately 30 days old.  This is not a novel issue.

Generally, when information is too old, the information is stale and cannot establish probable cause.  *U.S. v. Harvey,* 2 F.3d 1318, 1322 (3d Cir. 1993).  Age alone, however, does not determine whether information is stale, and courts must examine the nature of the crime and the type of evidence.  *Id.*  The determination of staleness requires more than simply counting the months between the facts relied on and the issuance of the warrant and is instead context dependant.  *Id*.  The Court of Appeals for the Third Circuit has noted that collectors of child pornography often store their material and rarely discard it.  *See Id.* at 1322-23.

The presumption that possessors of child pornography tend to compile and possess such materials for extended period of time was addressed by the Court of Appeals for the Third Circuit in *U.S. v. Eberle*, 266 Fed. Appx. 200 (3d Cir. 2008). In *Eberle*, a warrant was issued for substantially the same types of materials as the immediate case. However, the warrant was issued three years after pornographic materials were attributed to Defendant. *Id*. at 203. The Court not only upheld the warrant as not being stale; but the fact that the images originally reported to the National Center for Missing and Exploited Children were contained on a different computer[2] than the one ultimately searched, did not invalidate the warrant. *Id*. at 206.

In the instant case, Defendant utilized "Limewire," a peer-to-peer file sharing network, to upload and download various files, approximately 20 of which contained materials in violation of Title 18, United States Code, Section 2252(a)(4) and (a)(2). Trooper Erdely downloaded one of these files on June 19, 2007. *See* Doc. No. 62 at 10. On July 21, 2007, the Magistrate Judge found probable cause to grant a warrant for the residence where the internet service and computer storing the information was located. *See* Doc. No. 62. There is no reason to believe that Defendant would not still be in possession of child pornography a mere 32 days after Trooper Erdely downloaded the initial file. In actuality, our Court of Appeals, as well as several other appellate courts[3], have recognized that such persons tend to "stockpile" such information

---

[2] As with this warrant, the *Eberle* warrant contained any computer storage devices that could have been used to transfer the images, due to the fact that possessors of child pornography tend to routinely save the files on other devices when they change computers. *Id*. at 205.
[3] *See U.S. v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002); *U.S. v. Eberle*, 266 Fed. Appx. 200, 205-6 (3d Cir. 2008); *U.S. v. Harvey*, 2 F.3d 1318, 1322-23 (3d Cir. 1993); *U.S. v. Urban*, 404 F.3d 754, 774 (3d Cir. 2005); *U.S. v. Shields*, 458 F.3d 269, 279 (3d Cir. 2006); *U.S. v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997); *U.S. v. Peden*, 981 F.2d 514, 518-19 (5th Cir. 1989).

and, in fact, the search found several additional files on Defendant's computer. Accordingly, this Court finds that the warrant was not stale.

### C. The Warrant - Good Faith Exception

The Fourth Amendment to the Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const. amend. IV.* It directs that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." *Id*. "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. U.S.*, 275 U.S. 192, 196 (1927). Along with preventing general searches, the particularity requirement serves two other functions. It "memorializes precisely what search or seizure the issuing magistrate intended to permit," *Doe v. Groody*, 361 F.3d 232, 239 (3d. Cir. 2004) and informs the subject of the search "of the lawful authority of the executing officer, his need to search, and the limits of his power to search," *Groh v. Ramirez*, 540 U.S. 551, 561 (2004) (quoting *U.S. v. Chadwick*, 433 U.S. 1, 9 (1977)).

In *United States v. Leon,* the United States Supreme Court recognized that the purpose of the exclusionary rule - - to deter police misconduct - - would not be furthered by suppressing evidence obtained during a search "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." 468 U.S. 897, 919-20 (1984). The Court explained that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the

warrant is technically sufficient." *Id.* at 921; *See also Massachusetts v. Sheppard,* 468 U.S. 981, 988-90 (1984) (holding that the good faith exception applied in a case where the warrant lacked particularity because the officers reasonably believed the warrant was valid). Thus "evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Herring v. U.S.*, 129 S. Ct. 695, 701-02 (2009) (quoting *Illinois v. Krull*, 480 U.S. 340, 348-49 (1987)).

Accordingly, a determination that the Fourth Amendment has been violated does not necessarily require application of the exclusionary rule. *Id.* at 700; *see also Leon,* 468 U.S. at 919-20.  It applies when it serves "to safeguard Fourth Amendment rights ... through its deterrent effect." *U.S. v. Calandra*, 414 U.S. 338, 348 (1974).  To determine whether to apply the rule in a particular case, we weigh the benefits of the rule's deterrent effects against the costs of exclusion, which include "letting guilty and possibly dangerous defendants go free." *Herring,* 129 S.Ct. at 700, 701.  Because of the high social costs of excluding evidence in a criminal case, the Supreme Court has instructed that the exclusionary rule should only be applied when "police conduct [is] sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 702. Therefore, the exclusionary rule applies when police conduct is "deliberate, reckless, or grossly negligent," or when it will deter "recurring or systemic negligence." *Id.*  Put another way, isolated negligent acts on the part of the police do not warrant application of the exclusionary rule.

The Court of Appeals for the Third Circuit has previously recognized that the good faith exception does not apply in four limited circumstances:

> 1) where the Magistrate Judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> 2) where the Magistrate Judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
>
> 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> 4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*U.S. v. Zimmerman,* 277 F.3d 426, 436-37 (3d Cir. 2002) (quoting *U.S. v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001)).

These principles were recently applied by the Court of Appeals for the Third Circuit in *U.S. v. Tracey*, 2010 WL 681364 (3d Cir. 2010). In *Tracey*, the Court of Appeals upheld a warrant, overturning a suppression order by the District Court for the Middle District of Pennsylvania. *Id*. The District Court had previously ruled that the warrant was defective because the affidavit of probable cause was not attached to the warrant. *Id*. at 1. Despite the defects, the Court of Appeals ruled that, under the "good faith" exception,[4] a reasonable officer could have still relied on the warrant as valid. *Id.* at 9.

---

[4] A reasonable officer would also have confidence in the validity of the warrant after presenting it and having it approved by a district attorney and the Magistrate Judge, *See, e.g., U.S. v. Otero,* 563 F.3d 1127, 1134-36 (10th Cir. 2009) *cert. denied,* 130 S. Ct. 330 (2009) (holding that the good faith exception applied to a warrant that lacked particularity, in part because the agent consulted with the Assistant United States Attorney, who informed her it met legal requirements); *cf. U.S. v. Hallam,* 407 F.3d 942, 947 (8th Cir. 2005) (concluding that the good faith exception applied where the officer relied on the prosecutor's determination that the affidavit provided probable cause).

In the instant case, there is no indication that the Magistrate Judge relied on a deliberately or recklessly false affidavit, nor is there any proof that she abandoned her judicial role.  In addition, the record shows that Trooper Erdely sought the warrant after he downloaded files of child pornography form Defendant's computer.  These same files, and more, were found during the subsequent search.  Finally, the list of items to be searched (*See* Doc. No. 62 at 19) was limited to those items known to be used by possessors of child pornography for storage and communication purposes.  Accordingly, even if it were found that the warrant was in any manner deficient, the "good faith" exception would still apply and prevent the evidence and/or statements from being suppressed.

### D.  Trooper Erdely's Credentials

As part of Defendant's Motion to Suppress, he alleges that Trooper Erdely is not properly trained or qualified in investigating child pornography cases.  Specifically, Defendant implies that Trooper Erdely does not have any specific psychological training or profiling skills in investigating people who possess, or are interested in, child pornography.  *See* Doc. No. 70 at 9.  Defendant provides no case law[5] that establishes that such training is a prerequisite for a law enforcement official to investigate child pornography cases.

Notwithstanding this argument, it is more than apparent that Trooper Erdely was qualified to investigate such cases.  At the time, Trooper Erdely was a Pennsylvania State Trooper for nearly 16 years.  Doc. No. 62 at 2.  While working in numerous disciplines within

---

[5] Defendant's motion contains a scant reference to *Harvey* (supra) where he attempts to establish that the behavior of "child pornography collectors" are different than "pedophiles."  Doc. No. 70 at 9-10.

the field, Trooper Erdely attained several certifications, dealing with cyber-crime and more specifically, cyber-crimes related to child pornography. *Id*. at 3. In addition, Trooper Erdely has been involved in a significant amount of search warrants for violations of Title 18, United States Code, Section 2252(a)(4) and (a)(2). *Id.*

This Court finds that Trooper Erdley possessed ample qualifications and credentials to swear out the affidavit in question.

### E.  The Mingo Creek Conversation

At the suppression hearing, counsel for Defendant, through her cross examination of Trooper Donald Lucas, appeared to raise the issue that the officer's act of taking statements from Defendant, on the day the search warrant was executed, was done in violation of his *Miranda* rights. Although there is little mention of this issue in Defendant's proposed Findings of Fact and Conclusions of Law, this Court will address this issue because it was raised in the original motion to suppress statements. *See* Doc. No. 50.

Trooper Lucas testified that when the warrant was executed, Defendant's sister and brother-in-law were present, but Defendant was not home. *(Transcript for the Suppression Hearing),* Doc. No. 63 at 6. As the officers searched the premises , they contacted Defendant and asked him to come to the residence and be interviewed. *Id.* Once he arrived at the residence, Defendant was specifically told by Trooper Lucas that he was not under arrest and did not have to answer any questions. *Id*. at 7. Defendant then proceeded to give an approximately 30 minute interview with several officers in the dining room of the home. *Id*. During this time, Defendant made several comments related to the ownership of the seized files and prior dealings

with the legal system. *Id.* at 13. At no time during the interview was Defendant "*Mirandized*." *Id*. at 8.

Persons subject to custodial interrogation are entitled to receive information regarding their right to remain silent, their right to speak to an attorney, and their right to have a lawyer appointed to assist them if they are unable to afford a lawyer prior to any questioning. *Miranda v. Arizona,* 384 U.S. 436, 444-5 (1966).

Determinations of whether a person was subject to custodial interrogation are made on a case-by-case basis looking objectively at the totality of the circumstances. *Stansbury v. California,* 511 U.S. 318, 323 (1994) (noting that "[t]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."); *U.S. v. Leese,* 176 F.3d 740, 743 (3d Cir. 1999).

A person is in custody when he or she is either formally arrested or where his/her freedom of movement is restricted to the " 'degree associated with a formal arrest.' " *Leese,* 176 F.3d at 743 (citing *California v. Beheler,* 463 U.S. 1121, 1125 (1983) (internal citation omitted)). Where a person has not been arrested, "something must be said or done by the authorities, either in their manner of approach, or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so." *Steigler v. Anderson,* 496 F.2d 793, 799 (3d Cir. 1974). Thus, "[p]olice officers are not required to administer *Miranda* warnings to everyone whom they question." *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977).

Rather, the obligation to administer *Miranda* warnings exists only "where there has been such a restriction on a person's freedom as to render him 'in custody'. " *Stansbury,* 511 U.S. at 322.

Courts consider a variety of factors when determining if a person was in custody, including: (1) whether the officers told the suspect he/she was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning. *U.S. v. Killingsworth*, 118 Fed. Appx. 649 (3d Cir. 2004).

In the immediate case, Trooper Lucas indicated that Defendant was told that he was not under arrest and was free to not speak with the officers at several different occasions. Doc. No. 63 at 6-7. Second, the conversation Defendant had with the officers was in the dining room of the residence. *Id*. The conversation was relatively brief, taking approximately 30 minutes in length. *Id*. at 7. Trooper Lucas testified that a conversational tone was used by both Defendant and the officers, and that no service weapons were displayed. *Id.* at 11-12. Finally, the transcript indicates that Defendant had the requisite level of intelligence to make informed decisions in speaking with the officers and was not under the influence of drugs or alcohol. *Id*. All of these factors indicate that Defendant was not in any type of police custody on the day of the search and voluntarily chose to speak with law enforcement officials.

Because the record indicates that Defendant was never in police custody, the officers executing the search warrant were under no obligation to "*Mirandize*" Defendant. Thus, this claim is without merit.

### III.  Conclusion

For the reasons set forth hereinabove, Defendant's Motion to Suppress Evidence and Statements will be Denied.  In addition, Defendant's Motion to Produce Evidence Pursuant to Federal Rules of Evidence 404(b) and 609 will also be Denied.  An appropriate order follows.

s/Arthur J. Schwab  
Arthur J. Schwab  
United States District Court Judge
